UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
KINGVISION PAY-PER-VIEW, LTD.,
as Broadcast Licensee of the October 2, 2004
Trinidad/Mayorga Program,

                      Plaintiff,                **REPORT AND RECOMMENDATION**
                                                                                                                    CV-05-3091 (SJF) (JMA)

        -against-

NORMA R. MANCIA, Individually and as
officer, director, shareholder and/or principal of
EXTASIS CORP. d/b/a EXTASIS BAR a/k/a
EXTASY'S COCKTAIL LOUNGE a/k/a
EXSTACYS COCKTAIL LOUNGE, and
EXTASIS CORP. d/b/a EXTASIS BAR a/k/a
EXTASY'S COCKTAIL LOUNGE a/k/a
EXSTACYS COCKTAIL LOUNGE,

                      Defendants.
----------------------------------------------------------------X

APPEARANCES:

       Julie Cohen Lonstein, Esq.
       Lonstein Law Office, P.C.
       1 Terrace Hill, P.O. Box 351
       Ellenville, New York 12428
       *Attorney for Plaintiff*

**AZRACK, United States Magistrate Judge:**

       By Order dated February 28, 2006, the Honorable Sandra J. Feuerstein referred the above captioned matter to me, pursuant to 28 U.S.C. § 636(b), for a report and recommendation to determine plaintiff Kingvision Pay-Per-View's motion for default judgment against defendants Norma R. Mancia and Extasis Corp. d/b/a Extasis Bar a/k/a Extasy's Cocktail Lounge a/k/a Exstacys Cocktail Lounge, for alleged violations of the Cable Communications Policy Act, as

well as the scope of relief, including damages, attorney's fees, and costs.

For the reasons set forth below, I respectfully recommend that plaintiff's motion for default be granted and a judgment entered against defendants, jointly and severally, in the amount of $12,650.00, reflecting $1,000.00 in statutory damages, $10,000.00 for willful violation of the statute, as well as $1,650.00 for attorney's fees and costs.

## I. BACKGROUND

"Where, as here, 'the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688, at 58-59 (3d ed. 1998)).

Plaintiff Kingvision Pay-Per-View, Ltd. ("Kingvision") is a franchised cable television operator that markets and licenses the commercial viewing of boxing events on a pay-per-view basis. Kingvision was the broadcast licensee of the October 2, 2004 boxing match between Felix Trinidad and Ricardo Mayorga, including preliminary bouts. (Compl. ¶ 12; see also Affidavit of Donna Westrich, dated Sept. 21, 2005 ("Westrich Aff."), Ex. A. ) This license allowed Kingvision to exhibit the fight to locations such as theaters, arenas, bars, clubs, lounges, and restaurants via closed circuit television and encrypted satellite signal. (Compl. ¶ 13.) Kingvision paid a substantial fee to obtain the rights to telecast the program throughout New York and subsequently marketed the sub-licensing of the broadcast. (Id. ¶ 14.) Defendants did not contract with plaintiff to legally broadcast the boxing match. (Westrich Aff. ¶¶ 6, 8.)

The interstate transmission of the boxing match was electronically coded ("scrambled")

to protect its access from those who did not pay or properly obtain a license for its viewing. By failing to contract with plaintiff for the rights to air the boxing match in their establishment, defendants would not have had the ability to receive the signal without (1) the use of a "blackbox," which is purchased for a fee, and when installed on a cable TV line will descramble reception of pay-per-view broadcasts; (2) misrepresenting their commercial nature to the cable company in order to receive transmission at a residential price between $25.00 and $50.00; or (3) the use of an illegal cable drop or splice from an apartment or home adjacent to the commercial establishment that had already purchased the broadcast at a residential price between $25.00 and $50.00. (Westrich Aff. ¶ 10.)

On October 2, 2004, without authorization, defendants intercepted and received the signal for the Trinidad/Mayorga boxing event. (Compl. ¶15.) Defendants then transmitted the event to patrons in their commercial establishment, Extasy's Cocktail Lounge, located at 25-53 Steinway Street, Astoria, New York 11103. (Id. ¶ 16.) An investigator for plaintiff visited Extasy's Cocktail Lounge at approximately 9:35 p.m. and observed the Trinidad/Mayorga program on the television. (See Affidavit of Catherine Paradise, dated Oct. 16, 2004 ("Paradise Aff."), at 1, annexed to Westrich Aff. as Ex. D.) She counted 8 patrons and estimated the approximate capacity of the restaurant to be 25-50 patrons. (Id. at 2.)

Plaintiff commenced the instant action against defendants on June 27, 2005. After having been personally served with copies of the Summons and Complaint, defendants failed to answer or otherwise move with respect to the Complaint and the time to do so has expired. By motion dated November 18, 2005, plaintiff moves for a default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure. On February 28, 2006, Judge Feuerstein referred this

3

matter to me for a report and recommendation to determine plaintiff's motion for default judgment and conduct a damages inquest.

## II. DISCUSSION

### A. Default

Defendants' default amounts to an admission of liability. Therefore, all of the well-pleaded allegations in plaintiff's Complaint pertaining to liability are deemed true. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993). Plaintiff, however, must prove damages before the entry of a final default judgment. See Credit Lyonnais Sec., Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). The district court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that, when granting a default judgment, if "it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence . . . the court may conduct such hearings or order such references as it deems necessary and proper . . . ." The Second Circuit has held that, under Rule 55(b)(2), "it is not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine, 109 F.3d at 111 (citation and internal quotations omitted).

Plaintiff has submitted the following documentation for the court's review: 1) a Memorandum of Law; 2) an affidavit from Donna Westrich, Vice-President of Kingvision Pay-Per-View; 3) an affidavit from independent investigator, Catherine Paradise; and 4) an

Attorney's Affidavit of Costs and Fees from Julie Cohen Lonstein. The Court finds that these documents constitute sufficient evidence to form the basis for an award of damages.

**B. Damages**

Plaintiff seeks statutory damages for defendants' violations of the Cable Communications Policy Act, as amended, 47 U.S.C. §§ 553(a)(1) and 605(a), as well as enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). The court has discretion in assessing the amount of damages under these provisions. See Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 110 (E.D.N.Y. 1997).

**1. Statutory Damages**

Plaintiff seeks damages for defendants' violations of 47 U.S.C. §§ 553(a)(1) and 605(a). Section 553(a)(1) prohibits persons from "intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so . . . ." 47 U.S.C. § 553(a)(1). Section 605 proscribes the unauthorized interception and publication of any "radio communication." Id. § 605(a).

Where, as in this case, defendants admit to violating both sections, a plaintiff may elect to recover damages under § 605, which provides for greater recovery than § 553. See Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 127 (2d Cir. 1996). Section 605 states that where a plaintiff is unable to provide evidence of the extent of any violations, the plaintiff may elect to recover statutory damages, rather than actual damages. See 47 U.S.C. § 605(e)(3)(C)(i)(II). As a result of defendants' default, Kingvision has been unable to ascertain the extent of defendants' violations. Plaintiff has therefore elected to recover statutory damages.

The range of statutory damages for a violation of § 605(a) is $1,000 to $10,000. Id. The

court has discretion to determine the number of violations and assess damages for each violation. Id. The statute does not clearly define "violation." It is therefore left to the court to decide which acts constitute a violation.

The court has two options when assessing damages under § 605. First, it can multiply the number of patrons present at the unauthorized broadcasting by a specific dollar amount, typically the customary residential charge for the pay-per-view event being shown. See, e.g., Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999) (awarding statutory damages of $50.00 per patron); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (awarding statutory damages of $50.00 per patron); Cablevision Sys. Corp. v. 45 Midland Enters., 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (awarding statutory damages of $50.00 per patron). Alternatively, where the exact number of patrons is unknown, the court can impose damages based on what it "considers just." See, e.g., Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc., 146 F. Supp. 2d 955, 959 (E.D. Wis. 2001) (awarding $18,375 in statutory damages); Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993) (awarding $10,000 in statutory damages).

Other factors that the court may consider in assessing a plaintiff's damages are "'the pecuniary loss sustained by the victim as a result of the offense, the financial resources of the defendant, . . . the financial needs and earning ability of the defendant . . . as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose.'" Cablevision Sys. Corp. v. De Palma, No. 87-CV-3528, 1989 WL 8165, at *6 (E.D.N.Y. Jan. 17, 1989) (quoting Cablevision Sys. Dev. Co. v. Cohen, No. 84-CV-1155, slip op. at *4-5 (E.D.N.Y. May 20, 1988)).

Kingvision invests millions of dollars annually promoting boxing broadcasts. (Westrich Aff. ¶ 12.) With each establishment that pirates signals, plaintiff suffers an erosion of its profits and is consequently forced to pass on these costs to lawful residential and commercial customers through increased pricing. (Id. ¶ 15.) An affidavit from Donna Westrich, Vice-President of Kingvision Pay-Per-View, Ltd., states that the residential rate for the Trinidad/Mayorga event was between $25.00 and $50.00. (Id. ¶ 10B.) Plaintiff's fee for sub-licensing the broadcast to commercial establishments in New York is set forth in Kingvision's "Rate Card," and was set at approximately $15.00 per patron based on the fire code occupancy of the establishment, plus a $200.00 DirecTV authorization fee. (See Westrich Aff., Ex. B). Thus, had defendants paid the sub-licensing fee for their establishment, which plaintiff's investigator estimated to have an approximate capacity of 25-50 persons, the cost would have been between $575.00 and $950.00. Because there is no evidence stating the actual fire code occupancy of Extasy's Cocktail Lounge, the sub-licensing fee should not be utilized to assess defendant's statutory damages under § 605.

Based upon the foregoing considerations and facts of this case, I recommend assessing defendant's damages using the per patron amount of $50.00. This amount represents the maximum residential charge for the pay-per-view event being shown. On the evening of October 2, 2004, Catherine Paradise, an independent investigator, visited Extasy's Cocktail Lounge and determined that there were approximately 8 patrons present. (See Paradise Aff. at 2.) Awarding $50.00 for each of the 8 patrons amounts to $400.00. Because this amount is less than the statutory minimum requirement, I respectfully recommend that Kingvision be awarded statutory damages in the amount of $1,000.00.

### 2. Enhanced Damages

Plaintiff also seeks an increased award pursuant to 47 U.S.C. § 605 (e)(3)(C)(ii), which provides for enhanced damages if the violation was committed willfully and for commercial advantage or private financial gain. Willfulness is defined as "disregard for the governing statute and an indifference for its requirements[,]" Cablevision Sys. N.Y. City Corp. v. Lokshin, 980 F. Supp. 107, 114 (E.D.N.Y. 1997) (quoting Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 126-27 (1985)), and is established by the fact that an event is broadcast, without authorization, through a defendant's cable box. See Googies Luncheonette, 77 F. Supp. 2d at 490 ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."). Section 605(e)(3)(C)(ii) allows for increased damage awards against persons or entities operating commercial establishments that show the unauthorized programming to its patrons. See Googies Luncheonette, 77 F. Supp. 2d at 491 (increasing award by $12,000); Taco Rapido Rest., 988 F. Supp. at 111-12 (increasing award by $5,000).

Courts use a variety of factors to determine whether a defendant's willful conduct justifies enhanced damages. These factors include (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) advertising the broadcast; and (4) charging an admission fee or premiums for food and drinks. See Kingvision Pay-Per-View Ltd. v. El Rey Del Bistec Y Caridad, Inc., No. 01-CV-6562, 2001 WL 1586667, at *2 (S.D.N.Y. Dec. 12, 2001). Courts also consider the plaintiff's significant actual damages. Id.

In this case, Kingvision seeks the maximum increased award of $100,000 but has offered no evidence that defendants have pirated events other than the Trinidad/Mayorga boxing match. Plaintiff has also failed to establish that defendants advertised the broadcast of the event or that

the restaurant charged a premium on food and drinks. Defendants' conduct was nonetheless willful by virtue of their illegal interception of plaintiff's broadcast. I therefore recommend that the damage award be increased by $10,000.00 for willful violation of the statute. This enhancement adequately reflects plaintiff's estimated damages, defendants' likely commercial gain in selling food and drink to approximately 8 patrons, and the need to deter future theft of service.

### C. Attorney's Fees and Costs

#### 1. Attorney's Fees

Finally, plaintiff is seeking an award of attorney's fees and costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). (Pl.'s Mem. of Law at 6.) Under the "lodestar" method, attorney's fees are determined by taking "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see also Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058 (2d Cir. 1989), cert. denied, 496 U.S. 905 (1990). Reasonable hourly rates are determined by reference to the "prevailing [marketplace rates] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Cruz v. Local Union No. 3, 34 F.3d 1148, 1159 (2d Cir. 1994) (citation omitted). To receive such fees, a plaintiff must present time records to substantiate its fee request. See New York Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983). Such time records must be contemporaneous and indicate "for each attorney, the date, the hours expended, and the nature of the work done." Id. at 1148.

To support plaintiff's request for attorney's fees, attorney Julie Cohen Lonstein submitted contemporaneous time records that reflect 7.25 hours of work performed during the pendency of

9

this action, amounting to $1,200.00. (See Affidavit of Julie Lonstein, dated Nov. 8, 2005 ("Lonstein Aff.") ¶ 4.) She has not submitted documentation to authenticate the number of hours spent; however, her affidavit incorporates contemporaneous time records detailing the work done, hours expended, and the total amount due. (Id.) Ms. Lonstein affirms that she expended a total of 5.25 hours at a rate of $200 per hour, reflecting, inter alia, 1.0 hour of factual research and development, 2.0 hours drafting the Complaint and corporate disclosure, and 2.0 hours drafting the Motion for Default. (Id.) Ms. Lonstein also affirms 2.0 hours of paralegal time at a rate of $75 per hour. (Id.) I find the hourly rates and the total number of hours expended to be reasonable. Accordingly, I respectfully recommend that plaintiff be awarded $1,200.00 for reasonable attorney's fees.

### 2. Costs

Pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), plaintiff seeks reimbursement for costs in the amount of $800.00, which includes $250.00 for the court filing fee, $200.00 for the cost of service of process, and $350.00 for investigative costs. (Lonstein Aff. ¶ 3.) Plaintiff submitted documentary evidence to substantiate its request.

In light of the recent decisions in Kingvision Pay-Per-View, Ltd. v. Autar, --- F. Supp. 2d ---, No. 04-CV-3469, 2006 WL 997243 (E.D.N.Y. Apr. 13, 2006) and Kingvision Pay-Per-View, Ltd. v. Lalaleo, --- F. Supp. 2d ---, No. 05-CV-2659, 2006 WL 1071885 (E.D.N.Y. Apr. 24, 2006), I am persuaded that plaintiff's request for investigative costs should be denied. In the past, I have recommended that this Court award such costs. See, e.g., Garden City Boxing Club, Inc. v. Rosado, No. CV-05-1037, 2005 WL 3018704, at *6 (E.D.N.Y. Oct. 6, 2005) (Report and Recommendation of Azrack, M.J.). This practice, however, is discretionary under

§ 605(e)(3)(B)(iii). See Autar, 2006 WL 997243, at *6 (noting that courts may direct recovery of investigative costs, but are not required to do so). To recover such costs, plaintiff must "make a showing similar to that required to recover attorneys' fees." Id. This requires the plaintiff to document "(1) the amount of time necessary for the investigation; (2) how much the investigators charged per hour; [and] (3) why the investigators are qualified to demand the requested rate." Id. (quoting Int'l Cablevision, Inc. v. Noel, 982 F. Supp. 904, 918 (W.D.N.Y. 1997)) (internal quotation marks omitted).

In this case, the documentation supplied by plaintiff's counsel is insufficient. The investigator's invoice indicates that plaintiff was charged for one hour at an hourly rate of $350. (Westrich Aff., Ex. E.) Plaintiff offered no further evidence regarding the investigator's qualifications. Therefore, this Court has no basis for assessing the reasonableness of the investigator's rate. Moreover, the documentation is deficient regarding the time necessary for the investigation. According to the investigator's own "Piracy Affidavit," the investigator was inside Extasy's Cocktail Lounge for approximately nineteen minutes and subsequently took two photographs of the exterior of the premises. (Paradise Aff., at 1–2, annexed to Westrich Aff. as Ex. D.) It seems highly unlikely that it took the investigator forty-one minutes to take two photographs. There is no evidence to indicate how the investigator spent most of the hour. Accordingly, I respectfully recommend that plaintiff's request for $350.00 in investigative costs be denied and that plaintiff be awarded only $450.00 for costs incurred during the pendency of this action.

## III. CONCLUSION

For the above reasons, I respectfully recommend that plaintiff's motion for default be granted and a judgment entered against defendants, jointly and severally, in the amount of $12,650.00, reflecting $1,000.00 in statutory damages, $10,000.00 for the willful violation of the statute, as well as $1,650.00 for attorney's fees and costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: June 8, 2006
      Brooklyn, New York

                                            /s/
                                    JOAN M. AZRACK
                                    UNITED STATES MAGISTRATE JUDGE


Copies also mailed to:

      Norma R. Mancia
      137-60 45th Avenue - Apt. 5K
      Flushing, New York 11355
      *Defendant*

      Extacy's Cocktail Lounge
      25-53 Steinway Street
      Astoria, New York 11103
      *Defendant*